Case 8:20-mj-02575-CBD   Document 3   Filed 10/20/21   Page 1 of 16

✓ FILED  ___ ENTERED
___ LOGGED  ___ RECEIVED

9:45 am, Oct 20 2021
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY __TTS__ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF:<br><br>(1) THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER (240) 209-7380, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTIFIER 310410255698230 ("TARGET CELLULAR DEVICE 1")<br><br>(2) THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER (667) 210-7759, WITH INTERNATIONAL MOBILE EQUIPMENT IDENTITY 357825100009264 ("TARGET CELLULAR DEVICE 2") | Case No. 20-mj-2574-CBD<br><br><br><br><br><br>Case No. 20-mj-2575-CBD<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR SEARCH WARRANTS**

I, Julie Whisenhunt, Special Agent of the Drug Enforcement Administration (DEA), Washington Division Office (WDO), Washington, D.C., being duly sworn, depose and state the following:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B-1, to determine the location of the cellular device assigned call number (240) 209-7380 (hereafter, "**Target Cellular Device 1**") which is described in Attachment A-1.

Case 8:20-mj-02575-CBD   Document 3   Filed 10/20/21   Page 2 of 16

2. I also make this affidavit support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B-2, to determine the location of the cellular telephone assigned call number (667) 210-7759 (hereafter, "**Target Cellular Device 2**") which is described in Attachment A-2, (collectively with **Target Cellular Device 1**, the "**Target Cellular Devices**").

3. This is the second such application for the **Target Cellular Devices**. On August 31, 2020, the Honorable Timothy J. Sullivan, United States Magistrate Judge for the United States District Court for the District of Maryland, signed and authorized search warrants for the use of a cell-site simulator to locate **Target Cellular Device 1** and **Target Cellular Device 2**.

4. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a Special Agent of the DEA since January 1997. During my time in law enforcement, I have participated in the application for and execution of numerous arrest and search warrants in the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, and other evidence of criminal activity.

5. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled dangerous substances.

2

6. Based upon this experience, I have become knowledgeable of the methods and modes of narcotics operations, and the language and patterns of drug abuse and trafficking. During the course of my participation in investigations of narcotics trafficking organizations, I have testified at trial, in grand jury proceedings, and at probable cause and detention hearings. Through my employment with the DEA, I have gained knowledge in the use of various investigative techniques including the utilization of wiretaps, physical surveillance, undercover agents, confidential informants and cooperating witnesses, the controlled purchases of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. One purpose of applying for these warrants is to determine with precision the **Target Cellular Devices** locations. However, there is reason to believe the **Target Cellular Devices** are currently located somewhere within this district because:

    a. with respect to **Target Cellular Device 1**, its area code is associated with Maryland, and during recent location monitoring through a ping and cell-site simulator, it has been locating in this district and in the overnight hours predominantly at the following three address: 6009 Oxon Hill Road, Apartment #322, Oxon Hill, Maryland; 33 Fairhill Lane, Indian Head, Maryland; and 1702 Brooksquare Drive, Capitol Heights, Maryland.

  b. with respect to **Target Cellular Device 2**, its area code is associated with Maryland, and during recent location monitoring through a ping and cell-site simulator, it has been locating in this district and in the overnight hours predominantly at 66 Poplar Lane, Indian Head, Maryland.

  9. Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Cellular Devices** outside the district provided the device is within the district when the warrant is issued.

  10. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy to possess with intent to distribute controlled substances) have been committed, are being committed, and will be committed by Ola L'Chelle CLARK ("CLARK"), Rico SPINNER ("SPINNER"), and others. There is also probable cause to believe that the locations of **Target Cellular Device 1** and **Target Cellular Device 2** described in Attachments B-1 and B-2, respectively, will constitute evidence of these criminal violations, including leading to the identification of individuals engaged in the commission of these offenses and identifying locations where the targets engage in criminal activity and where they reside.

  11. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

  A. <u>Use of Phones by Drug Traffickers to Further Their Criminal Activity</u>

12. Based on my training, experience, and participation in narcotic and drug-related investigations and the training and experience of other agents with whom I am working on this investigation, I know that:

   a. It is common for individuals engaged in the distribution of controlled substances to use telephonic communications to further their criminal activities by coordinating the distribution of narcotics, illegal proceeds of narcotics trafficking, and other efforts of co-conspirators;

   b. Individuals engaging in the distribution of controlled substances use cellular telephones and cellular telephone technology to communicate and remain in constant contact with customers and the sources of those controlled substances;

   c. Individuals who engage in the distribution of controlled substances use cellular telephones to exchange information with customers and/or source(s) of supply through text and instant messaging in addition to direct telephone conversations;

   d. Individuals engaging in the distribution of controlled substances commonly conceal contraband, including narcotics such as cocaine and heroin, proceeds of drug sales, and records of drug transactions in secure locations within their residences and/or on their properties for their ready access and to conceal such contraband from law enforcement; and

   e. Individuals engaging in the distribution of controlled substances conceal in their residences drugs, currency, financial instructions, precious metals, jewelry, and other items pertaining to financial transactions relating to narcotics trafficking activities.

B.    Background of Current Investigation

13.    The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Ola L'Chelle CLARK ("CLARK"), Rico SPINNER ("SPINNER"), and others involved in possible violations of 21 U.S.C. §§ 841 and 846 (distribution of, and conspiracy to distribute, controlled substances).

14.    In February 2020, as a result of a six-month investigation, Co-Conspirator-1 (hereafter, "CC-1") was arrested in Loudoun County, Virginia, after approximately 25 kilograms of cocaine was seized from his/her vehicle. A search warrant executed at residences associated with CC-1 in Prince George's County, Maryland yielded approximately $1,044,000 U.S. Currency ("USC"), quantities of narcotics to include a kilogram of fentanyl, and a firearm. CC-1 was charged and pleaded guilty in the Eastern District of Virginia to conspiracy to distribute five kilograms or more of cocaine.

15.    As a result of various investigative means, agents learned Co-Conspirator-2 (hereafter, "CC-2") was CC-1's source of supply for the aforementioned narcotics. In June 2020, based on a criminal complaint filed in the Eastern District of Virginia, law enforcement arrested CC-2 and others in the Los Angeles, California area. Search warrants executed at residences associated with CC-2 and his/her associates in and around the greater Los Angeles, California area yielded approximately $780,000 in USC, ounce quantities of cocaine, approximately 5,000 pounds of marijuana, and 12 firearms. Upon arrest, CC-2 agreed to cooperate with the government and provide information regarding his/her involvement in drug-trafficking.

16.    In summary, CC-2 advised he/she obtains multi-kilogram quantities of cocaine, heroin, fentanyl, methamphetamine and marijuana from various sources of supply located in Mexico and the United States. CC-2 then coordinates the sale and distribution of these narcotics

to several sub-distributors operating in various locations across the United States to include Ohio, New York, Boston, and Washington, D.C. CC-2 also coordinates the collection of narcotics proceeds in the form of bulk USC and ships to his/her various sources of supply located domestically and in Mexico. CC-2 identified sub-distributors located in the greater Washington, D.C. area, including CC-1, Ola CLARK, and Rico SPINNER.

      C.      <u>CLARK and **Target Cellular Device 1**</u>

17. CC-2 positively identified CLARK from a previous booking photo of CLARK. Beginning around 2013 through the present, CC-2 supplied CLARK with kilogram quantities of marijuana, cocaine and heroin. CC-2 informs CLARK when he/she has narcotics and advises CLARK when to fly to California. CLARK conceals USC in her luggage and transports it from the east coast to California via commercial airlines. Once CLARK receives the narcotics from CC-2, she either ships the narcotics back to the East Coast using a mail delivery company such as Federal Express, or has CC-2 send it to the East Coast via tractor-trailer.

18. CLARK currently utilizes **Target Cellular Device 1** which is subscribed to CLARK's boyfriend, Martique Henry. Based on my training and experience, I know that narcotics traffickers often use fictitious names, or the names of friends and family, for their subscriber information as a way to thwart law enforcement.

19. On August 31, 2020, the Honorable Timothy J. Sullivan, United States Magistrate Judge for the United States District Court for the District of Maryland, signed and authorized a search warrant for the use of a cell-site simulator to locate **Target Cellular Device 1**. On September 1, 2020, law enforcement deployed the cell-site simulator and successfully located **Target Cellular Device 1** at 66 Poplar Lane, Indian Head, Maryland.

20.     On September 19, 2020, CC-2 communicated with CLARK using **Target Cellular Device 1**. CC-2 advised CLARK that he/she would have one kilogram of heroin for her within a week. CC-2 advised CLARK that he/she could send the kilogram of heroin to her via a tractor-trailer that was scheduled to leave California on or about September 29, 2020. CC-2 advised CLARK that the truck would be making a stop in the Baltimore area the first week of October. CLARK advised CC-2 to place her kilogram of heroin onto the truck and that she would meet the truck when it was in the area.

B.      SPINNER and **Target Cellular Device 2**

21.     CC-2 described SPINNER as a Jamaican male who is a fentanyl dealer in the greater Washington D.C. area. Beginning around June 2018 through the present, CC-2 supplied SPINNER with five to ten kilograms of fentanyl, kilogram quantities of methamphetamine, cocaine and marijuana. CC-2 coordinates the delivery of narcotics to, and collection of narcotics proceeds from, SPINNER via tractor-trailer.

22.     SPINNER currently utilizes **Target Cellular Device 2** which is subscribed to "Al Sure, 5412 E Street SE, Washington, D.C. 20019." The area code for **Target Cellular Device 2**, "667," is associated with Maryland phone numbers. Based on my training and experience, I know that narcotics traffickers often use fictitious names for their subscriber information as a way to thwart law enforcement.

23.     On August 31, 2020, the Honorable Timothy J. Sullivan, the Honorable Timothy J. Sullivan, United States Magistrate Judge for the United States District Court for the District of Maryland, signed and authorized a search warrant for the use of a cell-site simulator to locate **Target Cellular Device 2**. On September 29, 2020, law enforcement deployed the cell-site simulator and successfully located **Target Cellular Device 2** between apartment #321 and #322

8

in The Oxford Apartments, 6009 Oxon Hill Road, Oxon Hill, Maryland.  Through the list of current renters, agents learned that apartment #322 is currently rented to Shaquana Carter.  Through toll analysis of **Target Cellular Device 2**, agents learned that SPINNER is in daily communication with a phone believed to be used by Carter.  Furthermore, Carter, has been SPINNER's top caller since May 2020.

24. In September 2020, CC-2 spoke with SPINNER on **Target Cellular Device 2**.  During these conversations, CC-2 advised SPINNER that the tractor-trailer that was scheduled to leave California with SPINNER's narcotics was delayed due to the legitimate load that the truck was picking up being delayed.  CC-2 advised SPINNER that the tractor-trailer was scheduled to leave California on or about September 29, 2020 and would likely arrive to SPINNER during the first week of October 2020.  SPINNER advised CC-2 that he had his currency together and his customers were anxiously awaiting the arrival of the narcotics.

    C.    <u>Pending Delivery of Narcotics to CLARK and SPINNER</u>

25. On October 2, 2020, and in anticipation of the pending delivery of narcotics to CLARK and SPINNER, the Honorable Ivan D. Davis, United States Magistrate Judge for the United States District Court for the Eastern District of Virginia, issued warrants authorizing the renewed/continued collection of location-based information for the **Target Cellular Devices** for a period of 30 days, also known as a "ping."

26. On October 5, 2020, CC-2 advised law enforcement that the tractor-trailer containing CLARK's and SPINNER's narcotics was to depart California around midnight and the tractor trailer contained additional narcotics to be delivered to unknown customers in Missouri and Ohio.  CC-2 estimated the tractor-trailer would arrive in the greater Washington, D.C. metropolitan area on or about October 9-12, 2020, after making the other deliveries.

27.     Due to the lack of precise location-based information of the **Target Cellular Devices**, as well as the time lag between "pings" (approximately 15 minutes), law enforcement is seeking authorization to utilize a cell-site simulator to assist in locating the **Target Cellular Devices**. The cell-site simulator would be deployed during the time-frame leading up to, during, and following the anticipated transfer of narcotics to CLARK and SPINNER. Law enforcement anticipates the interdiction of narcotics, the identification of conspirators, and eventual arrests based on the utilization of the cell-site simulator.

## MANNER OF EXECUTION

28.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

29.     To facilitate execution of each warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

30. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and continue to flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There

is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Devices outside of daytime hours.

34. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*Julie D Whisenhunt*
Julie Whisenhunt
Special Agent
Drug Enforcement Administration

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this \_\_\_9th\_\_\_ day of October, 2020.

**Charles B. Day**
Digitally signed by Charles B. Day
DN: cn=Charles B. Day, o, ou=U.S. District Court of Maryland, email=MDD_CBDChambers@mdd.uscourts.gov, c=US
Date: 2020.10.09 14:54:43 -04'00'

Honorable Charles B. Day
United States Magistrate Judge

12

20-mj-2574-CBD

## **ATTACHMENT A-1**

This warrant authorizes the use of the electronic investigative technique described in Attachment B-1 to identify the location of the cellular device assigned phone number (240) 209-7380, with International Mobile Subscriber Identifier 310410255698230, whose wireless provider is AT&T, and whose listed subscriber is "Martique Henry."

20-mj-2574-CBD

## **ATTACHMENT B-1**

Pursuant to an investigation of Ola L'Chelle CLARK for possible violations of 21 U.S.C. §§ 841(a)(1) and 846, this warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A-1 by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night.  This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).

20-mj-2575-CBD

## **ATTACHMENT A-2**

This warrant authorizes the use of the electronic investigative technique described in Attachment B-2 to identify the location of the cellular device assigned phone number (667) 210-7759, with International Mobile Equipment Identity 357825100009264, whose wireless provider is Verizon Wireless, and whose listed subscriber is "Al Sure, 5412 E Street SE, Washington, D.C. 20019."

20-mj-2575-CBD

## **ATTACHMENT B-2**

Pursuant to an investigation of Rico SPINNER for a violation of 21 U.S.C. §§ 841(a)(1) and 846 , this warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A-2 by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night.  This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).